**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| I, A SOVEREIGN MAN, ASARKASAAMSU ) <br> RAASAR RA KARAPERNUNTU ) <br> HERISHETAPAHERU AS THE SOVEREIGN ) <br> PRIVATE PROSECUTOR: FOR A PRIVATE ) <br> PROSECUTOR WITNESS LIVING MAN f/k/a ) <br> CARL F: OF THE CHRISTOPHER FAMILY ) <br> AND FOR A PRIVATE PROSECUTOR ) <br> WITNESS LIVING WOMAN CEDELLE: ) <br> OF THE CHRISTOPHER FAMILY, ) <br> ) <br>          **Plaintiffs,** ) <br> ) <br>   **v.** ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br>          **Defendant.** ) <br> _____) | **Civil Action No. 2016-0027** |

**Appearances:**

**Carl F. Christopher,** *Pro Se*
St. Croix, U.S.V.I.

**Angela P. Tyson-Floyd, Esq.**
St. Croix, U.S.V.I.
    *For the United States of America*

<u>**MEMORANDUM OPINION**</u>

**Lewis, District Judge**

      THIS MATTER comes before the Court on Defendant United States of America's ("United

States") "Motion to Dismiss Amended Complaint" ("Motion to Dismiss"). (Dkt. No. 46). Plaintiffs

filed an Objection thereto.[1] (Dkt. No. 43). For the reasons that follow, the Court will grant the

---

[1] The full name of the document is "Objection-Argument against Wrongdoer Motion to Dismiss; Notice for this Court of Record Subject Matter Jurisdiction; and, Notice of Aggrieved Man and Woman Claimed Entitled Rights for Injuries and Harm, Caused by Wrongdoers Trespass."

United States' Motion to Dismiss, and will dismiss Plaintiffs' claims with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    BACKGROUND

In *United States of America v. Christopher, et al.*, Civil Action No. 1999-0196 ("*Christopher*"), the United States, acting through the U.S. Department of Agriculture ("USDA") and Farmers Home Administration ("FHA"), brought a foreclosure action against Plaintiffs after they defaulted on their payment obligations under a Promissory Note executed on May 22, 1981. *Christopher*, Dkt. No. 71 at 2. The Mortgage secured payment of the indebtedness owed by Plaintiffs to the United States under the Note, and covered certain land and premises described as

> Parcel 1, Matr. 13AA, Estate Sprat Hall, Northside Quarter A, comprising 44.48 U.S. acres, more or less, as the same is shown and described in P.W.D. Map No. 11, dated August 4, 1938.

(the "Property"). *Id*. at 3.

On May 3, 1989, the United States released a portion of the Property—nearly 35 of the original 44.48 acres—from the May 22, 1981 Mortgage following a sale by Plaintiffs to the "Bolt Family Trust." *Id.* at 3 n.3. As reflected in the "Partial Release," the Christophers retained the portion of the Property described in the document as "the 7.25 Acres now identified as Plot 33 Sprat Hall, previously identified as part of Parcel #7, Matr. 13AA identified." *Id.* at Dkt. No. 55-2. On May 22, 1990, Plaintiffs and the United States entered into a reamortization agreement of

---

(Dkt. No. 43 at 1). There were two Motions to Dismiss filed by the United States (Dkt. Nos. 30, 46), in light of the Court's ruling that the initially filed Motion was moot following the filing of an Amended Complaint (Dkt. No. 45). The Motions to Dismiss were identical. (Dkt. Nos. 30, 46). Plaintiffs filed an Objection to the first Motion. (Dkt. No. 43). Because the Motions to Dismiss were identical, the Court will consider the arguments in Defendants' Objection to the originally-filed Motion to Dismiss in the context of this Opinion.

the May 22, 1981 Note, which became the subject of the *Christopher* action. *Christopher*, Dkt. No. 55-4.

Following a 10-year stay of the 1999 *Christopher* action due to Plaintiffs' participation in the *Chiang v. Schafer* class action discrimination lawsuit, the United States moved for summary judgment on September 20, 2011. *Christopher*, Dkt. No. 54. On June 8, 2012, the Court granted the United States' Motion for Summary Judgment. *Christopher,* Dkt. No. 70. In the Memorandum Opinion granting summary judgment, the Court rejected Plaintiffs' arguments that: (1) there were genuine issues of material fact as to whether Defendants were fairly treated by the United States and as to the amount they owed on the loan; (2) the debt at issue had been relieved due to Plaintiffs' prior participation and settlement in *Pigford v. Schafer,* Civ. No. 97-1978 (D.D.C. Aug. 28, 1997); (3) the interest rate on the loan was usurious; and (4) the United States did not make an effort to assist Plaintiffs in refinancing or restructuring the loan for purposes of making the debt more manageable. *Christopher*, Dkt. No. 71 at 9-14.

Following the entry of Judgment in favor of the United States on June 8, 2012, Plaintiffs moved for reconsideration. *Christopher*, Dkt. No. 72. In their Motion, Plaintiffs mounted another challenge to the United States' ability to foreclose on the property. Plaintiffs raised arguments that: (1) they were due a credit on the balance in the amount of a percentage of the value of the three notes paid by the Bolt Family Trust; (2) the transaction by which the four loans were restructured was unconscionable; (3) the restructured interest rate on the three Bolt Family loans was too high; and (4) Plaintiffs had been treated unfairly. *Id*. at 3-4 The Court denied the Motion for Reconsideration, explaining that the loans assumed by the Bolt Family Trust were not the subject of the lawsuit and thus Plaintiffs had not raised new evidence; the Motion for Reconsideration was not premised on an intervening change in the law; and Plaintiffs had not demonstrated that the

Court overlooked a dispositive factual or legal matter when adjudicating the Motion for Summary Judgment so as to demonstrate manifest injustice. *Id*. at 6-8. Plaintiffs then appealed the Court's decision to the Third Circuit Court of Appeals, which affirmed the District Court's decision. *Christopher*, Dkt. Nos. 78, 87.

Plaintiffs continued—albeit unsuccessfully—to challenge the validity of the foreclosure judgment. After the Court denied Plaintiffs' Motion to Stay the Writ of Execution (Dkt. No. 85), Plaintiffs then sought to preclude the scheduled Marshal's Sale and the Court's confirmation of the Sale. *Christopher*, Dkt. Nos. 96, 104. Plaintiffs asserted *inter alia*, that: the United States "cannot produce an authentic legal negotiable instrument showing that they are the rightful note holder of any land at present owned by the Defendants;" the property sold was apparently described in different ways; and the United States has created a "false, forged, corrupted, and inaccurate document" in their Partial Release of Lien to cover up the fact that the property is incorrectly described on the United States' documents. *Christopher*, Dkt. No. 96. The Court rejected Plaintiffs' arguments, noting that they were based on the merits of the case, which had been adjudicated by the Court and upheld by the Third Circuit. *Christopher*, Dkt. No. 106 at 3.

On May 25, 2016, Plaintiffs filed the instant action alleging, *inter alia*, that the United States used "forged, fraudulent, and unlawful" mortgage lien documents in order to obtain Judgment in the *Christopher* Action. (Dkt. No. 1). On January 12, 2017, the Magistrate Judge granted Plaintiffs' Motion to Amend the Complaint. (Dkt. No. 35). As an Amended Complaint, Plaintiffs filed a document entitled, "Affidavit of Mixed Common Law Action Claim - (Cause of Action)" ("Amended Complaint") (Dkt. No. 17-1). Similar to other filings by Plaintiffs in this and other cases before this Court, Plaintiffs' Amended Complaint includes detailed descriptions of Plaintiffs' heritage; details of their alleged royal status as decedents from African and Caribbean

royalty; and lessons about the alleged crimes against humanity perpetuated through the colonization of the Caribbean islands. *See id. at* 3-7. Among this intricate weaving of explanations, Plaintiffs claim that the United States—through the USDA, FHA, USDA-Rural Development, and the United States Attorney's Office for the District of the Virgin Islands, St. Croix Division—obtained the foreclosure judgment in the *Christopher* action by using an alleged "forged and fraudulent" Partial Release. *Id.* at 2. Disclaiming its validity, Plaintiffs argue that the Partial Release: (1) is a forged and fraudulent instrument without a detailed description of the Property that remained after the Bolt Family Trust assumed the land, *id.* 9; (2) did not contain "a proper certified survey and insured title with a . . . detailed description of the property . . . that proves the [United States] had in fact a first priority mortgage on the Property," *id.* at 9; (3) did not contain an appraisal identifying the location or value of the property to which the mortgage was attached, *id.* at 9-10; and (4) was prepared and executed without Plaintiffs' consent, approval, and agreement, *id.* at 10. Plaintiffs also challenge the Marshal's Sale of the Property and the bid offered by the United States. *Id.* at 17. Further, Plaintiffs contend that by using the Partial Release to obtain summary judgment in *Christopher*, the United States has committed numerous torts and violated Plaintiffs' constitutional rights.[2] *Id.* at 15.

In their requests for relief, Plaintiffs assert, *inter alia,* that they are entitled to reparations in the form of: ownership of the Property originally conveyed to them via the Warranty Deed and a self-created "Sovereign Fee Schedule" that they allege establishes their damages by the United

---

[2] Plaintiffs expressly allege that the United States has committed "barratry, unconscionable contracting, harassment, usury, mail corruption, conspiracy, fraud, libel, tort, trespass, threat of violence and false arrest, defamation of character, discrimination, financial extortion, infliction of unnecessary stress, breach of contract, violation of fiduciary trust, false representation, misrepresentation, and trespass upon [Plaintiffs'] private . . . property and rights." (Dkt. No. 17-1 at 15). Plaintiffs also appear to allege a constitutional claim pursuant to 42 U.S.C. § 1985. *Id.* at 1.

States and that has been filed in various judicial and government offices, including the District Court, which "are subject to change . . . based on the conditions and magnitude of required litigation." *Id.* at 23-24. Plaintiffs further claim fees of $19.00 per minute from April 22, 1995 until the United States cancels the Notice of *Lis Pendens* against the foreclosed property and removes Plaintiffs' names from all proceedings. *Id.* at 24.

Thereafter, on March 9, 2018, the United States filed a Motion to Dismiss. (Dkt. No. 46). In its accompanying Memorandum of Law, the United States argues that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 49 at 1). First, the United States argues that the Court lacks subject matter jurisdiction over Plaintiffs' tort claims because Plaintiffs have not met the statutory prerequisites to waive the United States' limited sovereign immunity. *Id.* at 7. Specifically, the United States argues that Plaintiffs failed to exhaust their administrative remedies in compliance with the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a). *Id.* at 7-10. In support of its assertion, the United States attaches Declarations by representatives of several agencies who are responsible for the receipt of administrative tort claims. (Dkt. Nos. 49-1, 49-2, 49-3, 49-4, 49-5, 49-6).[3]  These representatives generally aver that

---

[3] The Declarations address the issue of whether Plaintiffs submitted tort claims to each respective agency. A representative from the USDA attests that the agency has no record of receiving written notification of a tort claim "concerning the circumstances set forth in the complaint filed in the instant matter." (Dkt. No. 49-3). Representatives of the U.S. Department of State, U.S. Department of Interior, and U.S. Department of Agriculture – Rural Development, Florida/USVI Office attest that their respective agencies have never received a claim from any of the Plaintiffs for any tort committed between May 25, 2014 and May 25, 2016. (Dkt. Nos. 49-2, 49-4). In another Declaration, the U.S. Department of Justice's representative states that "there is no record of an administrative claim being presented by Plaintiffs between May 25, 2014 and May 25, 2016." (Dkt. No. 49-5). A representative from the U.S. Attorney's Office for the District of the Virgin Islands attests that the agency has not received an administrative claim from any of the Plaintiffs "for any tort committed prior to May 25, 2014, and during the period May 25, 2014 and May 25, 2016." (Dkt. No. 49-6).

Plaintiffs have not submitted tort claims to their agencies. *Id*. In this regard, the United States argues that because Plaintiffs failed to comply with the procedural requirements of 28 U.S.C. § 2675(a) prior to bringing suit—namely, presenting an administrative claim to the respective agencies which Plaintiffs allege committed various torts—all of their tort claims in the instant action are barred. (Dkt. No. 49 at 10).

Further, the United States asserts that, even if Plaintiffs had timely filed administrative tort claims, the FTCA would preclude the claims for fraud, abuse of process, libel, defamation, misrepresentation, and deceit pursuant to the intentional torts exception of the FTCA, 28 U.S.C. § 2680(h).[4] *Id*. at 10-11. Accordingly, the United States maintains that Plaintiffs' common law tort allegations, as presented in the Amended Complaint, should be dismissed for lack of subject matter jurisdiction. *Id*. at 11.

The United States also contends that the Court lacks subject matter jurisdiction over Plaintiffs' constitutional tort claims under 42 U.S.C. § 1985, arguing that the statute does not waive the United States' sovereign immunity. *Id.* at 11-12. The United States further argues that Plaintiffs' allegations of common law claims such as barratry, usury, mail corruption, and financial extortion should be dismissed for lack of subject matter jurisdiction because Plaintiffs have failed to cite to any federal law that authorizes private suits for money damages against the United States for the aforementioned claims. *Id.* at 12. In addition, the United States asserts that pursuant to the Tucker Act, this Court does not have jurisdiction over Plaintiffs' breach of contract claim because Plaintiffs state that the sum of their claims exceed $10,000. *Id.* at 14-16.

---

[4] 28 U.S.C. § 2680(h) provides, in pertinent part, that the FTCA does not waive the government's sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

Finally, the United States asserts that even if Plaintiffs' claims are not barred by sovereign immunity under the FTCA, Plaintiffs' claims are barred by the doctrine of *res judicata*. *Id.* at 12-14. In support of its argument, the United States notes that the allegations contained within the Amended Complaint were raised or could have been raised in the prior *Christopher* action. *Id.* at 14.

Plaintiffs filed an Objection along with a Supplemental Memorandum (Dkt. Nos. 43, 43-1). Similar to the Amended Complaint, Plaintiffs' Objection contains descriptions of the alleged historical wrongdoings by the United States, assertions regarding the sovereignty of the United States, and arguments regarding the alleged invalidity of the foreclosure judgment in *Christopher*. (Dkt. No. 43-1 at 2-6). Plaintiffs also appear to argue that the Court has subject matter jurisdiction over their claims, although not addressing any specific arguments asserted by the United States. *Id.* at 6. Instead, Plaintiffs claim that the United States' Motion to Dismiss is "totally unfounded," because the Court—as a federal district court—has subject matter jurisdiction "in all cases in law and equity arising under the U.S. Constitution, the laws of the United States, and its treaties." *Id.* at 4. Plaintiffs therefore maintain that the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* at 4. Plaintiffs do not address the United States' allegations that they failed to exhaust their administrative remedies.

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Rule 12(b)(1) Subject Matter Jurisdiction

It is axiomatic that federal courts are courts of limited jurisdiction, and that subject matter jurisdiction must exist in each case. *See Redhead Mgmt., Inc. v. U.S. Virgin Islands*, Civil No. 2010-0055, 2011 WL 1506040, at *1 (D.V.I. Mar. 31, 2011) (citing *Carlsberg Resources Corp. v. Cambria Sav. and Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977) ("[F]ederal courts are without

power to adjudicate the substantive claims in a lawsuit, absent a firm bedrock of jurisdiction. When the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition of the merits.").

When a court is faced—as here—with both Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss, "as a general rule, the correct procedure is to consider dismissal on the jurisdictional ground first 'for the obvious reason that if the court lacks jurisdiction to hear the case then a *fortiori* it lacks jurisdiction to rule on the merits.'" *Benta v. Christie's, Inc.*, Civil Action No. 2013-0080, 2017 WL 1345218, at *5 (D.V.I. Mar. 17, 2017) (internal citations omitted). An attack under Rule 12(b)(1) to a court's subject matter jurisdiction can be either a facial or factual attack. *G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 468 (3d Cir. 2022) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). A facial attack—as it is denominated—challenges the sufficiency of the jurisdictional allegations in the complaint on their face. *G.W.*, 28 F.4th at 465; *see also  Davis v. Dawgs of St. John, Inc*., No. 3:20-CV-0112, 2022 WL 17735829, at *3 (D.V.I. Dec. 16, 2022) (citing *Petruska v. Gannon University*, 462 F.3d 294, 302, n.3 (3d Cir. 2006)). A facial attack requires that a court "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *D'Antonio v. Borough of Allendale*, No. 22-1329, 2022 WL 10965674, at *2 (3d Cir. Oct. 19, 2022) (citing *Gould Elecs., Inc*., 220 F.3d at 176).

In contrast, when considering a factual challenge, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case, and no presumptive truthfulness attaches to the plaintiff's allegations." *Helton v. United States*, No. 22-1815, 2022 WL 17496016, at *1 (3d Cir. Dec. 8, 2022) (citing *Hartig Drug Co. v. Senju Pharm. Co*., 836 F.3d 261, 268 (3d

9

Cir. 2016)). To proceed with a factual challenge, a defendant must file an answer or "otherwise present[ ] competing facts." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.3d 700, 711 (3d Cir. 1982) ("[Defendant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack[.]"). Regardless of the type of challenge—facial or factual—the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, 2010 WL 3908567, at *2 (D.N.J. Sept. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

Here, the United States presents a factual challenge—through its filing of Declarations—to the Court's subject matter jurisdiction based on its argument that Plaintiffs failed to exhaust administrative remedies. *See Boseski v. N. Arlington Municipality,* 621 F. App'x 131, 136 (3d Cir. 2015) (citing *Gould*, 220 F.3d at 176) (noting than in reviewing a factual challenge to a complaint under Rule 12(b)(1), a court may consider evidence extrinsic to the pleadings, such as depositions and affidavits).

### B.    Rule 12(b)(6) Failure to State a Claim

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. In evaluating such a motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Rivera v. Monko,* 37 F.4th 909, 914 (3d Cir. 2022) (internal citations omitted). To withstand a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In the Third Circuit, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the court must: (1) "tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "assume [the] veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Shropshire v. Wheeler*, 858 F. App'x 580, 582 (3d Cir. 2021) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and citations omitted)).

In considering a Rule 12(b)(6) motion, the court must consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Simko v. United States Steel Corp*, 992 F.3d 198, 201 n.1 (3d Cir. 2021) (citing *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

### III.    DISCUSSION

#### A.    The Court's Subject Matter Jurisdiction

Preliminarily, Plaintiffs' assertion regarding the Court's subject matter jurisdiction is incorrect. For tort claims against the United States, the FTCA itself, not the general grant of federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.SC. § 1332, is the source of a federal court's jurisdiction. *See Bohnenkamp v. Whisterbarth*, Case No. 1:19-CV-

00115, 2021 WL 1600477, at *4 (W.D. Pa. Apr. 23, 2021) (citing *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008), as amended (Sept. 29, 2008)); *Hernandez v. T.S.A.*, Civ. No. 2:12-02796, 2014 WL 60048, at *3 (D.N.J. Jan. 7, 2014).

### 1.    The Intentional Tort Exception

"As a sovereign, the United States is immune from suit unless it consents to be sued." *Knapp v. United States, Dep't of Health & Hum. Servs.*, 836 F. App'x 86, 88–89 (3d Cir. 2020) (citing *White-Squire v. U. S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010)). "That consent 'must be unequivocally expressed, and the terms of such consent define the court's subject matter jurisdiction.'" *Id.* (internal quotation marks omitted) (citing *United States v. Mitchell*, 445 U.S. at 538 (1980)). The FTCA acts as a limited waiver of the United States' sovereign immunity. *See Knapp,* 836 F. App'x at 89; *Walker v. United States*, 616 F. App'x 497, 499 (3d Cir. 2015) (citing *White–Squire,* 592 F.3d at 456). "If the United States is sued in tort, . . . the FTCA provides the exclusive avenue to relief, if any can be had." *Vanderklok v. United States*, 868 F.3d 189, 201 (3d Cir. 2017) (citing 28 U.S.C. § 2679(b)(1)).

There is an "extensive list of exceptions which limits the waiver of sovereign immunity, and accordingly, limits a court's subject matter jurisdiction under the FTCA." *Rosado v. Sessions*, Civil Action No. 15-3999, 2018 WL 2411608, at *3 (D.N.J. May 29, 2018) (internal citations omitted). Of particular note here, the exceptions "include a disclaimer of liability for the United States for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" *Id.* (citing *Vanderklok,* 868 F.3d at 202) (quoting 28 U.S.C. § 2680(h)); *see* 28 U.S.C. 2680(h). If a claim "fall[s] within that exception to the waiver of immunity," then a plaintiff "is out of luck under the FTCA." *Id.*; *see also McCluskey v. United States*, Civil Action No. 10-

0694, 2010 WL 4024717, at *8 (W.D. Pa. Oct. 12, 2010) ("If a plaintiff's claim falls within one of these 'exceptions,' the United States retains its immunity from suit with respect to this claim and a court is again without subject matter jurisdiction.") (citation omitted).

In their Amended Complaint, Plaintiffs allege that, by using the Partial Release in seeking the foreclosure judgment in *Christopher*, the United States committed various torts. In this regard, Plaintiffs allege that the United States committed, *inter alia*, common law crimes of "fraud, libel . . . false arrest, defamation of character . . . false representation, and misrepresentation." (Dkt. No. 17-1 at 15). Plaintiffs further allege that by allowing the *lis pendens* to remain on the foreclosed property in *Christopher*, the United States committed "a libelous and malicious tort with the intention of discrediting and defaming the credibility of the Living Witness Victims." *Id*.

The tort claims of libel, false arrest, false representation, and misrepresentation are barred by the intentional tort exception to the waiver of sovereign immunity for tort claims in §2680(h). *See Vanderklok,* 868 F.3d at 202 (citing *Millbrook v. United States*, 569 U.S. 50 (2013)). Further, the Third Circuit has held that the United States retains sovereign immunity for defamation claims. *Izzo v. U.S. Gov't*, 138 F. App'x 387, 389 (3d Cir. 2005) (finding that defamation claim against United States was properly dismissed by district court because "defamation is not included in the list of actions for which the United States has waived immunity under the FTCA."); *Brumfield v. Sanders*, 232 F. 3d 376, 386 (3d Cir. 2000)) ("[D]efamation suits against the United States are prohibited."); *Giordano v. Hohns*, No. CV 23-1614, 2024 WL 422087, at *581 (E.D. Pa. Feb. 2, 2024) (citing *Brumfield*); *Sash v. United States*, No. CIVA 09-2074, 2010 WL 1529825, at *7 (D.N.J. Apr. 14, 2010) (same). In addition, although fraud does not appear in the list of enumerated torts, the Third Circuit has held that 28 U.S.C. § 2680(h) bars claims arising out of fraud. *See Vanderklok,* 868 F.3d at 202 n.13 (citing *Beneficial Consumer Disc. Co. v. Poltonowicz,* 47 F.3d

91, 96 (3d Cir. 1995)) (noting that "courts have consistently held that fraud claims against the government are not permitted under the FTCA").

In view of the foregoing, the Court will dismiss Plaintiffs' libel, false arrest, false representation, misrepresentation, defamation, and fraud claims with prejudice.

### 2.    Plaintiffs' Trespass and Invasion of Privacy Claims

Next, in seeking to dismiss the Amended Complaint, the United States argues that the Court lacks subject matter jurisdiction over Plaintiffs' tort claims of trespass[5] and invasion of privacy because Plaintiffs failed to exhaust their administrative remedies before bringing this FTCA action. (Dkt. No. 49 at 7). In so arguing, the United States relies on Declarations from six representatives of federal agencies who generally attest that Plaintiffs have not submitted claims either prior to or during the period of May 25, 2014 to May 25, 2016, or for torts committed during the stated time frame. (Dkt. Nos. 49-1, 49-2, 49-3, 49-4, 49-5, 49-6).

Section 2675(a) of Title 28, United States Code, provides in pertinent part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

---

[5] While trespass is generally considered an intentional tort, it is not subject to the intentional tort exception under 28 U.S.C. § 2680(h); *Billups v. United States*, 854 F. App'x 514, 517 (4th Cir. 2021) (citing *Levin v. United States*, 568 U.S. 503, 507 n.1 (2013) (noting that the intentional tort exception "does not remove from the FTCA's waiver all intentional torts, e.g., . . .trespass"); *Bohnenkamp*, 2021 WL 1600477, at *7 (same); *Beeman v. United States*, No. CIV.A. 11-228, 2013 WL 1314467, at *2 (W.D. Pa. Mar. 28, 2013) (citing *Holmes Herefords, Inc. v. United States*, 753 F. Supp. 901, 912 (D. Wyo. 1990) ("The United States may be sued, pursuant to the FTCA, for trespass.").

28 U.S.C. § 2675(a). Section 2401(b) further requires that a tort claim must be

> presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). Thus, prior to commencing an FTCA action against the United States in federal court, a plaintiff must "first present the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). Further, the administrative claim must be accompanied by a claim for money damages in a "sum certain." *Id.* The requirement of the filing of an FTCA claim and the final denial by that agency, or the passage of six months, prior to the commencement of a lawsuit is jurisdictional and cannot be waived. *See Sconiers v. United States*, 896 F.3d 595, 598 (3d Cir. 2018) (emphasis added) (holding that the FTCA requires that the claimant must "file *both* a claim with the federal agency within two years of the tort *and* a suit within six months of the agency's denial"); *Bruno v. U.S. Postal Serv*., 264 F. App'x 248 (3d Cir. 2008) (quoting *Bialowas v. United States of America*, 443 F.2d 1047, 1049 (3d Cir. 1971). "Such procedural compliance is the price [a] plaintiff must pay to take advantage of the limited waiver of sovereign immunity provided by the FTCA." *Robinson v. United States*, Civil Action No. 13-CV-1106, 2014 WL 2940454, at *5 (M.D. Pa. June 30, 2014).

Where plaintiffs fail to show that they exhausted their administrative remedies by filing an administrative claim in compliance with the FTCA, dismissal for lack of subject matter jurisdiction is an appropriate remedy. *Ellington v. Vance*, No. 21-1910, 2023 WL 4893583, at *1 (3d Cir. Aug. 1, 2023) ("If a plaintiff fails to comply with the FTCA's administrative grievance procedure before filing suit, sovereign immunity is not waived, and subject-matter jurisdiction is therefore lacking."); *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) (affirming district court's dismissal of plaintiff's FTCA claim where plaintiff failed to file administrative tort claim with

federal agency); *Abulkhair v. Bush*, 413 F. App'x 502, 506 (3d Cir. 2011) (finding that the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies); *Accolla v. United States Gov't*, 369 F. App'x 408, 409-410 (3d Cir. 2010) (same).

Although the United States contends that Plaintiffs have not alleged *any* facts regarding the submission of an administrative claim, such contention is not well-founded. In their Amended Complaint, Plaintiffs allege that they "prepared and delivered to the Secretary of Agriculture Mr. Tom Vilsack ['s] Offices a [l]etter of warning and an invitation to investigate this case as well as other cases . . . with the commitment that if no cooperation and investigation was conducted the Sovereign Private Prosecutor would file a [c]ivil [a]ction [c]laim against the U.S.A/-USDA-FmHA-&R-D." (Dkt. No. 17-1 at ¶ 65). Dated August 25, 2015 and originally filed in the *Christopher* action, the letter is addressed to then Secretary of Agriculture Tom Vilsack, then Assistant Secretary for Civil Rights of the USDA Joe Leonard, Jr., and then General Counsel of the USDA Jeffrey Preito. *Christopher*, Dkt. No. 119-1. In the letter, Plaintiffs complain of "wrongful foreclosure practices, injustices, and legal plundering" engaged in by Rural Development through lending practices to low-income families. *Id.* Plaintiffs discuss the *Christopher* litigation and mention that there was "an illegal and fraudulent *lis penden*[*s*] for 13 years on a parcel of land" that was no longer owned by Plaintiffs. *Id*. at 6. Plaintiffs conclude the letter by requesting a written response from Secretary Vilsack or another designee "with the authority and legal power to investigate this matter and bring resolution immediately." *Id*. at 10. Plaintiffs also describe the notarized letter as "legal testimony to be used as proof of . . . inquiry into the matter beyond the Area Director of St. Croix and the regional Director of Florida." *Id*

Notwithstanding the purported existence of this letter, Plaintiffs have failed to establish that an administrative tort claim was properly filed with the USDA. Specifically, Plaintiffs have not demonstrated that the USDA actually *received* the letter. *See, e.g.*, *Lightfoot v. United States*, 564 F.3d 625,627-28 (3d Cir. 2009) (holding that "a plaintiff must demonstrate that the Federal agency was in actual receipt of the claim, whether on initial presentment or on a request for reconsideration"); *Medina v. City of Phila.*, 219 F. App'x 169, 172 (3d Cir. 2007) ("In order to satisfy the presentment requirement, a plaintiff must demonstrate that the appropriate federal agency actually received the claim"); *Arias v. United State*s, Civil Action No. 05-4275, 2007 WL 608375, at *4 (D.N.J. Feb. 23, 2007) (citing *Anderson v. United States*, 744 F. Supp. at 641, 643-44 (E.D. Pa. 1990) ("The mere mailing of an administrative claim will not satisfy the requisite presentment."); *Murray v. United States*, 604 F. Supp. 444, 445 (E.D. Pa. 1985) ("Mailing of an administrative claim is insufficient to satisfy the presentment requirement . . . .").

Moreover, despite bearing the burden of proving that they complied with the exhaustion requirement of the FTCA, Plaintiffs did not even address the issue, let alone challenge the United States' Declarations in their Opposition to the Motion to Dismiss. The United States submitted supporting Declarations from agency representatives—including the USDA—setting forth various searches and procedures that were employed to determine whether Plaintiffs presented a claim with each agency. (Dkt. Nos. 49-1, 49-2, 49-3, 49-4, 49-5, 49-6). The Declaration by the USDA provides that there is no record that Plaintiffs filed an administrative claim with the USDA for alleged torts committed at any time. *Id.* In light of the strict construction of the FTCA's exhaustion requirement, the Court finds that Plaintiffs have not met their burden of showing that they have exhausted their administrative remedies. *See Bohnenkamp*, 2021 WL 1600477, at *11 (citing *McNeil v. United States*, 508 U.S. 106, 109 (1993) (plaintiff bears burden to show compliance with

17

FTCA's exhaustion requirement); *Boseski*, 2014 WL 5361744, at *2 *aff'd*, 621 F. App'x 131 (3d Cir. 2015) (dismissing plaintiff's complaint with prejudice because plaintiff failed to meet burden showing compliance with the FTCA's administrative exhaustion requirements). Accordingly, Plaintiffs' tort claims of trespass and invasion of privacy will be dismissed for failure to exhaust administrative remedies.

### 3.     Plaintiffs' 42 U.S.C. § 1985 Claim

In the Amended Complaint, Plaintiffs appear to allege a constitutional tort claim pursuant to 42 U.S.C. § 1985. (Dkt. No. 1-20 at 3).[6] However, 42 U.S.C. § 1985 is not a waiver of the United States' sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States has simply not rendered itself liable under [the FTCA] for constitutional tort claims."); *Tucker v. Sebelius*, 2013 WL 6054552, at *7 (D.N.J. Nov. 15, 2013), *aff'd sub nom. Tucker v. Sec'y of Health & Hum. Servs.*, 588 F. App'x 110 (3d Cir. 2014) (noting that the doctrine of sovereign immunity barred an action under 42 U.S.C. § 1985); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007) (citing *F.D.I.C.*, 510 U.S. at 477-78) ("Moreover, to the extent that Webb seeks relief under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, his constitutional tort claims against the United States fail as a matter of law."). Accordingly, to the extent that Plaintiffs are seeking to assert a claim under 42 U.S.C. § 1985, the Court will dismiss with prejudice such a claim because it is barred by the doctrine of sovereign immunity. *See Meehan v. Taylor*, Civil No. 12-4079, 2013 WL 4517943, at *2 n.1 (D.N.J. Aug. 26, 2013) (internal citations omitted) (dismissing 42 U.S.C. § 1985 claim against the United States for lack of subject matter jurisdiction).

---

[6] Plaintiffs state, "These natural rights are to **A**sk, **S**eek, **K**nock by claim to require reparation, amends, redress, for the relief from the damages caused by any living human or persons who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42[.]"

### 4. Plaintiffs' Other Common Law Claims

In the Amended Complaint, Plaintiffs raise other causes of action against the United States. For example, Plaintiffs state—without reference to any relevant authority—claims of barratry, usury, harassment, "mail corruption," conspiracy, "financial extortion," and "violation of fiduciary trust." (Dkt. No. 17-1 at 15).

Plaintiffs fail to show that the United States has waived its sovereign immunity as to any of those claims. *See, e.g.*, *F.D.I.C. v. Royal Park No. 14, Ltd*., 800 F. Supp. 477, 481 (N.D. Tex. 1992), *aff'd*, 2 F.3d 637 (5th Cir. 1993) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1965) (United States and its agents are immune from usury penalties under the doctrine of sovereign immunity); *Neuman v. United States*, No. 07-CV-0362, 2007 WL 3407442, at *3 (S.D. Ill. Nov. 15, 2007) (finding that plaintiff's claims even with references to criminal code and unspecified civil statutes did not show that the United States had waived sovereign immunity for claims of conspiracy, barratry, harassment, and other state law claims). As the Third Circuit has noted, "district courts only have subject-matter jurisdiction over a plaintiff's claims 'if the United States has explicitly waived its sovereign immunity.'" *Mohn v. United States*, No. 23-1023, 2023 WL 4311609, at *1 (3d Cir. July 3, 2023) (citing *Vanderklok*, 868 F.3d at 201).

Because Plaintiffs have not met their burden of establishing subject matter jurisdiction for these claims, the Court will dismiss Plaintiffs' claims of barratry, usury, harassment, "mail corruption," conspiracy, "financial extortion," and "violation of fiduciary trust" with prejudice.

### 5. Breach of Contract Claim

In their Amended Complaint, Plaintiffs also appear to allege a breach of contract claim against the United States. (Dkt. No. 17-1 at ¶ 46). In its Motion, the United States argues that the Court lacks subject matter jurisdiction over the claim because Plaintiffs allege that the claim

exceeds $75,000 and only the United States Court of Federal Claims has jurisdiction over claims exceeding $10,000. (Dkt. No. 49 at 15). The United States further argues that even if Plaintiffs' breach of contract claim does not exceed the allowable amount of $10,000, Plaintiffs have not identified the substantive right, Act of Congress, regulatory law, or contract that creates a substantive right to damages.

Generally, the Tucker Act waives the government's sovereign immunity for "claim[s] against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (a)(1). The "Big" Tucker Act grants exclusive jurisdiction to the United States Court of Federal Claims to render judgment upon claims against the United States exceeding $10,000 in value, while the Little Tucker Act grants concurrent jurisdiction to district courts for such claims not exceeding $10,000 in value. 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2).

The Court disagrees with the United States' assertion that Plaintiffs have alleged that their breach of contract claim is greater than $75,000. Based on the Amended Complaint, it appears that Plaintiffs are only pleading the jurisdictional amount in accordance with 28 U.S.C. §1332(a). *See* Dkt. No. 17-1 at 3. Nonetheless, Plaintiffs' breach of contract claim is too vaguely stated to determine whether the monetary damages Plaintiffs seek for that claim falls under or over the $10,000 cap provided by the Tucker Act, which would be the determinative factor of this Court's jurisdiction over the claim. Accordingly, because Plaintiffs' allegations are insufficient to carry their burden of establishing the Court's subject matter jurisdiction over their breach of contract claim, the claim will be dismissed.

### B.    Rule 12(b)(6) Dismissal

Even assuming that any of Plaintiffs' claims could survive dismissal under Rule 12(b)(1)—and in particular Plaintiffs' trespass, invasion of privacy, and breach of contract claims—these claims would still be barred under the principle of *res judicata*.

*Res judicata*, also known as claim preclusion, generally operates to bar a party from initiating a second action against the same adversary based on the same claims asserted in the first action. *Duhaney v. Att'y Gen*., 621 F.3d 340, 347 (3d Cir. 2014) (citation omitted). "At the motion to dismiss stage, courts may grant a Rule 12(b)(6) motion on the basis of res judicata, an affirmative defense, only 'if the predicate establishing the defense is apparent from the face of the complaint.' If it is not, 'the district court must either deny the 12(b)(6) motion or convert it to a motion for summary judgment and provide both parties an opportunity to present relevant material.'" *Chaudhari v. Parker*, No. 21-1337, 2022 WL 3025478, at *2 (3d Cir. Aug. 1, 2022) (citations omitted).

For *res judicata* to apply, a defendant must show that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *Lewis v. O'Donnell*, 674 F. App'x 234, 237 (3d Cir. 2017). In deciding whether two suits are based on the same cause of action, the Third Circuit takes a broad view, looking to whether there is an "essential similarity of the underlying events giving rise to the various legal claims." *Id.* "The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

Each element of *res judicata* is met in this case. First, the *Christopher* action—which was resolved by summary judgment—resulted in a final judgment on the merits for *res judicata*

purposes. *See Villarreal v. United Airlines, Inc,* Civil Action No. 19-10580, 2021 WL 761723, at *5 (D.N.J. Feb. 26, 2021) (citing *Hubicki v. ACF Indus.*, *Inc.*, 484 F.2d 519, 524 (3d Cir. 1973) ("[T]he law is clear that summary judgment is a final judgment on the merits sufficient to raise the defense of *res judicata*....")). Further, the Court's decision was affirmed by the Third Circuit. (*Christopher*, Dkt. No. 87). Second, the same parties—Plaintiffs and the United States—were involved in the foreclosure action and are now parties to the instant matter. Finally, the Court finds that Plaintiffs' claims against the United States arise out of the same transaction and occurrences as the *Christopher* foreclosure action. Indeed, Plaintiffs' Amended Complaint raises issues as to the validity of the documents used to obtain the foreclosure judgment. Further, Plaintiffs' claims— which were raised in an attempt to challenge the foreclosure judgment—have already been considered and rejected in the Court's prior Memorandum Opinions in the *Christopher* foreclosure action. (Dkt. Nos. 71, 77, 82, 90, 106).

To the extent that Plaintiffs' claims are distinct from those asserted in the *Christopher* action, they would still be barred by *res judicata* as claims that "could have been raised in the foreclosure action." *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 105 (3d Cir. 2012); *see also Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) ("*[R]es judicata* bars not only claims that were brought in the previous action, but also claims that could have been brought.") (citation omitted). In the foreclosure action, Plaintiffs had the opportunity—and indeed, took advantage of such opportunity—to raise various issues related to the validity of the documents related to the underlying foreclosure action, especially the Partial Release and the Marshal's Sale of the Property. *See, e.g.*, *Christopher*, Dkt. No. 96 (alleging, *inter alia*, that the United States used "false, fabricated, and false documents" to obtain judgment) and Dkt. No. 104 (raising objections to United States' Motion for Order Confirming Sale in alleging that the property description used

was incorrect and United States' bid was null and void). While the Christophers attempt to continue to raise their grievances with the foreclosure action, they will not be permitted to do so. *Coppolino v. Comm'r Pennsylvania State Police*, 693 F. App'x 128, 129 (3d Cir. 2017) ("At its core, the legal doctrine of *res judicata* prohibits a second bite at the litigation apple."). Plaintiffs have now sought, through one means or another, to challenge before this Court the foreclosure judgment in *Christopher* on multiple occasions—including, via reconsideration (*Christopher*, Dkt. No. 72); via a Motion to Stay the Writ of Execution (*Christopher*, Dkt. No. 85); via a Motion for a Jury Trial after the Third Circuit denied Plaintiffs' appeal (*Christopher*, Dkt. No. 88); via attempts to preclude the Marshal's Sale and the Court's confirmation of sale (*Christopher*, Dkt. Nos. 96 and 104); and now via the instant action. Notwithstanding their *pro se* status, at some point, litigation must end. Accordingly, pursuant to Rule 12(b)(6), the Court will dismiss with prejudice any remaining claims asserted by Plaintiffs in this action pursuant to the doctrine of *res judicata*.

## IV.    CONCLUSION

In view of the foregoing, the Court will grant the United States' Motion to Dismiss. (Dkt. No. 46). Accordingly, the Court will dismiss Plaintiffs' claims with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

An appropriate Order accompanies this Memorandum Opinion.

Date:  November 14, 2024                        _____/s/_____
                                                WILMA A. LEWIS
                                                District Judge